IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| ALONZO DEMONT RICE, #479048 | § | |
| VS. | § | CIVIL ACTION NO. 9:09cv120 |
| GREGORY OLIVER, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

Plaintiff Alonzo Demont Rice, an inmate confined in the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit under 42 U.S.C. § 1983 complaining his life is in danger from other inmates as the result of retaliatory action taken against him by certain prison officials. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

**I.  BACKGROUND**

On February 25, 2010, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Supervisor Ginger Lively and Warden Dwayne Dewberry testified under oath about prison policies and information contained in the Plaintiff's prison records.

1

Plaintiff alleges that Defendants Warden Oliver and Officer Parrish violated his Eighth Amendment right to be protected from threats by fellow prisoners by placing him back into housing assignments where, he alleges, they knew he had been threatened or had been in altercations in the past. *See* Complaint at 6. He further alleges that both of them participated in an Offender's Protection Investigation ("OPI") committee, run under the Unit Classification Committee ("UCC"), on June 12, 2009, without his consent although both had been the subject of Plaintiff's past grievances for "staff misconduct." *Id*. He alleges that he was subjected to certain disciplinary actions for fighting and/or refusing housing assignments associated with his claims of being threatened. *Id*. at 7. He also contends he was "intentionally provoked" in one of these fights by an offender who threw Plaintiff's personal property off the runs at K-Line. *Id*.

Plaintiff further alleges that Defendant Parrish made unspecified racial comments toward him, which was part of the pattern of grievance complaints he had made against this Defendant, among others. *Id*. Additionally, Plaintiff alleges that after he submitted evidence of a threatening letter to the UCC on June 9, 2009, and with pending grievance complaints against Defendants Oliver and Parrish, the two retaliated against him and violated Plaintiff's due process rights by not allowing him to confirm any other evidence submitted to the UCC for the June 12, 2009, hearing. Given these allegations, Plaintiff contends that it was a due process violation for the two Defendants to participate in the OPI/UCC on June 12, 2009. *Id*. at 9.

Separately, Plaintiff alleges that Defendant Shona Hannor violated his due process rights by making "triumphed [*sic*] up false disciplinary charges" against him that she had ordered him to accept housing assignments and that he had refused. *Id*. at 10. He was found guilty in disciplinary case numbers 20090278183 and 20090285961, in which he lost good time credit, but claims that he

can prove the reports were false. *Id*. However, he has never proven such falsity inasmuch as the disciplinary cases have never been overturned.

Finally, Plaintiff alleges that Defendants Captain King and Captain Furr violated his due process rights by failing to conform to the disciplinary rule handbook during his disciplinary hearings. *Id*. at 11. Specifically, they took "his earned good time on 'two' different cases but failed to follow the established [pre-hearing detention] guidelines. . . ." *Id*.

During the *Spears* hearing, Plaintiff reiterated the statements of his complaint. The Court also asked him about other putative Defendants he identified in certain other documents he sought leave to file as "amended complaints." Each putative amended complaint was individually disallowed for failure to meet pleading standards. *See* Docket Entries # 24 (denying motion without prejudice to filing a proper amended complaint); 44 (granting motion only to the extent of correcting the spelling of Defendants Parrish's and Furr's names, but denying filing as an amended complaint otherwise without prejudice to filing a proper amended complaint), 52 (proposed amended complaint was attempt to amend in a piecemeal fashion, did not comport with the "short and plain" standard of Fed. R. Civ. P. 8(a) and was therefore denied without prejudice to filing a proper amended complaint). Plaintiff expressed interest in naming some additional defendants, for example, grievance investigators Floyd Hicks and Tommy Goodin because Plaintiff believed they "destroyed" certain of his grievances. However, in other cases he stated that individuals identified in his putative amendments were witnesses only, including for example, counsel substitute Jan Smith and Sergeant Leontyne Haynes. Plaintiff's wishes as to others, such as Officer Valdez and Officer Boston, remain unclear. None of these individuals has been added as defendants to this action. To the extent that they appear in the caption of the docket misidentified as "defendants," the Court will direct the Clerk

to remove their names.

After considering Plaintiff's pleadings, the Court concluded that the claims needed to be further developed by the use of a written report prepared by prison officials. *See Cay v. Estelle*, 789 F.2d 318, 326-27 (5th Cir. 1986), *overruled on other grounds by Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir. 1993); *Parker v. Carpenter*, 978 F.2d 190, 191-92 n.2 (5th Cir. 1992); *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978 (*cited with approval in Cay* and *Parker*). Accordingly, on June 2, 2010, the Court issued an Order directing the appropriate officials of the Texas Department of Criminal Justice, Correctional Institutions Division, to undertake a review of the subject matter of the original complaint (specifically, docket entry #1, but not including any of the putative "amended" complaints) to ascertain facts and circumstances and to submit a written report of its findings. Pursuant to that Order, on September 13, 2010, the Office of the Texas Attorney General (the "OAG"), in the role of *amicus curiae*, filed a Special Report (docket entry #61) with associated exhibits (docket entry #63) and the OAG's analysis and recommendations (the "*Martinez* Report").

The *Martinez* Report documents that Plaintiff has filed numerous grievances and OPI claims during his incarceration. *See* Exs. A (grievance records) and E (OPI records) to *Martinez* Report. Further, the OPI records show that each and every one of Plaintiff's claims of personal endangerment to which he refers in his complaint were fully investigated with complete reports filed. *See* Ex. E. The reports all reflect that none of the claims Plaintiff identified in his complaint could be substantiated. The *Martinez* Report also includes sworn affidavits from each of the named Defendants, except Defendant Hannor, who is identified as no longer working for the Texas Department of Criminal Justice, along with affidavits from other officers involved in investigating Plaintiff's various claims (Exs. G-M, R and S). In addition, the *Martinez* Report includes Plaintiff's

4

Classification (Ex. B), Disciplinary (Exs. C, N, O and P) and Medical (Ex. D) records. The Court has reviewed these records and cites them as necessary herein.

Plaintiff filed a Response to the *Martinez* Report on September 17, 2010 (docket entry #64). His reiterates the claims of his original complaint as a differing view from the OAG's investigatory report and describes information contained in certain documents he sought to have filed. He wished to have 33 prisoner affidavits filed at that time, but they were denied as excessively long. Further, he admitted that they were the same documents he proffered to the Court during the *Spears* hearing. Having heard Plaintiff's description of the documents, the Court had informed Plaintiff they were not necessary to the determination of his claims. Nonetheless, he later filed nine prisoner affidavits (*see* docket entries #68-76), none of which actually address the claims contained in Plaintiff's complaint.

## II. DISCUSSION AND ANALYSIS

The Court will consider each of Plaintiff's claims in order.

### A. Claims Against Warden Oliver And Officer Parrish

The Court will first address Plaintiff's claims against Warden Oliver and Officer Parrish. Plaintiff contends that Warden Oliver and Officer Parrish disregarded his safety in violation of the Eighth Amendment by placing him back into an environment that was unsafe, predicated on his claims of having received threats of bodily harm. He also contends that both individuals violated his due process rights by participating in a UCC/OPI hearing on June 12, 2009, and denying him the ability to confirm evidence that was submitted to the UCC.

#### 1. Deliberate Indifference To Plaintiff's Safety

"The Eighth Amendment affords prisoners protection against injury at the hands of other

inmates." *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986) (citing *Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983)). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Instead, the standard to employ is whether prison officials were "deliberately indifferent" to the safety needs of an inmate. *Id*.; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence on the part of prison officials is not enough. *Id*. at 835. The deliberate indifference standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentional oversights. *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997). A prisoner does not have a basis for a civil rights claim for failure to protect simply because he disagrees with the classification decision made by classification officials. *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (citing *Wilson v. Budney*, 976 F.2d 957 (5th Cir. 1992) (per curiam)).

Here, Plaintiff has not shown that either Warden Oliver or Officer Parrish was deliberately indifferent to his safety. He alleges that he was specifically threatened by his return to his housing assignment after two events. First, he had a "fighting altercation" with a cellmate after he "was intentionally provoked by this offender intentionally throwing all of my personal property and personal belongings of the K-Line runs." *See* Complaint at 7; *see also* Step 1 and Step 2 Offender Grievance reports at Ex. A ¶¶ 202-05. This event took place on or about November 5, 2008. *Id*. at

6

202. The allegedly assaulting offender was Devin Williams. *Id*. An Offender Protection Investigation was conducted on November 13, 2008, on Plaintiff's life endangerment claim and no evidence was found to support it. *See id*. at 203, 205; Ex. E at 55-61 (OPI Life Endangerment Investigation Report). The investigating officer, Sgt. Wyatt, found "no merit in said offender allegations. Offender Rice could not provide any evidence, nor could he produce any witnesses to support his allegations." Ex. E at 58. In fact, Sgt. Wyatt was "unable to substantiate subject's allegations." *Id*. Sgt. Wyatt confirmed his findings in an affidavit he executed on September 2, 2010. *See* Ex. K (the "Wyatt Aff."). In addition to finding no substantiation of the specific allegations, Sgt. Wyatt observed that Plaintiff's record "displayed a pattern of filing life endangerment investigations on the various units to which he was assigned. Of those numerous life endangerment allegations, none were substantiated.". *Id*. at 2. The UCC Chairperson for Plaintiff's specific claim against Devin Williams, M. Butcher, agreed on November 18, 2008, that there was "no evidence to support LID." Ex. E at 59. Ultimately, Plaintiff was written a disciplinary case, number 20090065354, for fighting. He was found guilty of the offense. There is no basis for Plaintiff's instant claim that he was treated indifferently in this matter; in fact, the record shows that although none of his claims was substantiated, he was nonetheless reassigned housing away from Devin Williams. Given the investigatory reports, Plaintiff's claims do not support a finding that either Warden Oliver or Officer Parris was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" or that they actually drew such an inference. *Farmer*, 511 U.S. at 837.

Plaintiff's second specific allegation in his complaint is that he received a note or "letter" on or about June 3, 2009, in his cell. *See* Complaint at 8. This letter allegedly threatened his safety and

was allegedly signed by "known 'gang' members of the general population." *Id*.; *see also* Step 2 Offender Grievance report number 2009160426 submitted on July 23, 2009, at Ex. A ¶¶ 122-23 (investigation revealed "no evidence to support your claim of an inappropriate investigation concerning your initial life endangerment claim."); Ex. E at 25 (allegation that letter was signed by the "Bloods"). He further contends he gave the letter to his counsel substitute, Jan Smith, to forward to the UCC. Complaint at 8.

On June 10, 2009, Officer Parrish, a Security Threat Group Officer, investigated the claim on referral from Major Fisher. *See* Ex. E at 1. She interviewed Plaintiff, who contended that he believed the Bloods had a "smash on sight" order out on him for snitching to security staff that offender Ronald Williams had stolen his radio. *Id*. He told her that "they said Ronald Williams had a smash on site [*sic*] on me," *id*., but could not identify the individual who told him this threat information. *Id*. He also told Officer Parrish that he had given the note to counsel substitute Jan Smith. *Id*. At the end of the interview, Plaintiff became belligerent and told Officer Parrish he would sue her personally if he was sent back into population and something happened to him. *Id*. Officer Parrish went on to investigate the claim of the note and interviewed other officers and supervisors as well as other offenders and conducted cell searches but ultimately found "negative results to substantiate any of Offender Rice's allegations." *Id*. She noted that Officer Baskin had conducted a recent, thorough investigation on May 18, 2009, into Plaintiff's related allegations against Ronald Williams and found no evidence to substantiate those claims. *Id*.

Officer Baskin's investigation report is part of the *Martinez* Report. *See* Ex. E at 30-33. He reported that Ronald Williams was, at that time, Plaintiff's cellmate. *Id*. at 33. Plaintiff told Officer Baskin that Williams had someone steal his hotpot and that Williams had extorted him for some

8

coffee sometime previously. *Id*. Plaintiff was placed in transient housing during the investigation. *Id*. Plaintiff alleged that while he was packing his property for the move to transient housing, Williams threatened him and called him a snitch and that he would put a "smash on sight" out on him. *Id*. He allegedly yelled this to another offender, Kevin Hall, in a nearby cell. *Id*. Plaintiff claimed that both were Bloods. *Id*. He also claimed that Hall had given Williams some commissary items while Williams was on cell restriction, creating a relationship between the two. *Id*. However, Officer Baskin determined from the prison's computer records that Hall was a Crip, not a Blood. *Id*. Therefore, Plaintiff's claims were suspect on that score. Further, a Security Threat Group Officer searched STG records and found nothing to substantiate Williams' alleged membership as a Blood. *Id*. Following interviews and searches, Officer Baskin believed that Plaintiff had purchased the coffee voluntarily, in part because it was the cheapest coffee available and if someone was going to extort coffee, it would not be that cheap brand. *Id*. Williams did tell Officer Baskin that he is affiliated with the Bloods, but that he does not hold any rank, contrary to Plaintiff's claim, and that he would be released in nine months. *Id*. He stated he had "no problem" with Plaintiff. Additionally, Plaintiff told another officer, Sgt. R. Smith, that he had no problem with Williams. *Id*.; *see also* Ex. L (affidavit of Sgt. Ronnie Smith (the "Smith Aff.")).

In fact, Sgt. Smith interviewed both Offender Williams and Plaintiff, each of whom told him that neither had any problem with the other and that "no problems existed"; Plaintiff hold him "everything was okay"; Williams stated in front of Plaintiff that "if he had a problem then he would tell [Plaintiff] directly; Sgt. Smith considered "[e]verything was resolved[.]" *See* Smith Aff. at 1.

Based on his own investigation and the report of Sgt. Smith, Officer Baskin considered Williams credible and found "no evidence that exists to back [Plaintiff's] claim." Ex. E at 33.

9

Overall, Officer Baskin was unable to substantiate Plaintiff's allegations. *Id*.

Major C. Fisher filed a separate statement that he investigated the alleged "kite" (or letter) from the Bloods and found that Plaintiff "made complaints with no way to confirm them or they were investigated and found not to be true." *Id*. at 43.

Based on these investigations, there is nothing to support Plaintiff's claim that either Warden Oliver or Officer Parrish acted with deliberate indifference to his safety on the issue of the alleged letter. The incident was fully investigated and found to be unsubstantiated, again creating no inference of any threat to Plaintiff's safety. *Farmer*, 511 U.S. at 837. Furthermore, Plaintiff has not alleged in either his complaint nor during the *Spears* hearing that he has been injured following any of the investigations outlined above.

2.  **Plaintiff's Retaliation And Due Process Claims**

In addition to the deliberate indifference claims, Plaintiff complains that Warden Oliver's and Officer Parrish's attendance at the UCC meeting on or about June 12, 2009, related to the letter incident, was retaliatory and to his detriment because of his past grievances against them alleging "staff misconduct." Complaint at 9. He also claims a violation of due process as to his classification and housing assignments because of their alleged participation in the meeting.

Notwithstanding his claim, Plaintiff has not identified a constitutionally cognizable liberty interest in his classification or assignment to housing. *See Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (per curiam) (holding that prisoner's placement in administrative segregation due to allegedly false information in his file indicating that he was a gang member did not constitute a deprivation of a constitutionally protected liberty interest), *cert. denied*, 517 U.S. 1196, 116 S. Ct. 1690, 134 L. Ed. 2d 791 (1996). An inmate has no protected property or liberty interest in custodial

classifications. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999); *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir.) (per curiam), *cert. denied*, 488 U.S. 985, 109 S. Ct. 540, 102 L. Ed. 2d 570 (1988). The classification of inmates is left to the discretion of prison officials. *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990). The Constitution "does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkerson v. Austin*, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005) (citation omitted); *see also Meachum v. Fano*, 427 U.S. 215, 225, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976) (no liberty interest arising from due process clause itself in transfer from low to maximum security prison because "confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"); *Neals*, *supra*, 59 F.3d at 533 ("a prison inmate does not have a protectable liberty or property interest in his custodial classification"). Because plaintiff lacks a constitutionally protected liberty interest in his classification status, he cannot complain of the constitutionality of the procedural devices attendant to that decision. *See Orellana v. Kyle*, 65 F.3d 29, 32 (5th Cir. 1995) (per curiam), *cert. denied*, 516 U.S. 1059, 116 S. Ct. 736, 133 L. Ed. 2d 686 (1996). To the extent Plaintiff complains that the UCC did not follow prison rules or regulations with respect to either Warden Oliver or Officer Parrish attending the hearing, the Fifth Circuit has held that a violation of prison rules alone is not sufficient to rise to the standards of a constitutional claim. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir.1996) (per curiam). Therefore, his due process claim fails.

Finally, to the extent that Plaintiff contends that either Warden Oliver or Officer Parrish retaliated against him for having filed grievances against them, he still has not demonstrated a constitutional violation.

To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir.) (per curiam), *reh'g and reh'g en banc denied*, 203 F.3d 826 (5th Cir. 1999). Officials may not retaliate against an inmate for using the grievance system. *Jackson v. Cain*, 864 F.2d 1235, 1249 (5th Cir. 1989). A plaintiff must allege facts showing that the defendant possessed a retaliatory motive. *See Whittington v. Lynaugh*, 842 F.2d 818, 820 (5th Cir.) (per curiam), *cert. denied*, 488 U.S. 840, 109 S. Ct. 108, 102 L. Ed. 2d 83 (1988); *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1193 (5th Cir. 1985) (per curiam). He must allege more than his personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995, 118 S. Ct. 559, 139 L. Ed. 2d 400 (1997); *Jones*, 188 F.3d at 324-25. Mere conclusory allegations of retaliation are not enough. *Moody*, 857 F.2d at 258. Moreover, he must show that "but for" a retaliatory motive, the defendants would not have engaged in the action. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084, 116 S. Ct. 800, 133 L. Ed. 2d 747 (1996). A plaintiff must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Id*. Finally, the retaliatory adverse act must be more than a *de minimis* act. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006), *cert. denied*, 549 U.S. 1038, 127 S. Ct. 596, 166 L. Ed. 2d 443 (2006).

Here, Plaintiff's allegations of retaliation are merely conclusory at best. *Moody*, 857 F.2d at 258. He has produced or alleged no motivation or any chronology of events sufficient to infer a retaliatory act by either Defendant. *Woods*, 60 F.3d at 1166. His claim of retaliation, therefore, fails.

### B. Claims Against Captain Furr, Captain King And Officer Hannor

Plaintiff's allegations against Officer Hannor and Captains Furr and King all derive directly from certain disciplinary cases. He alleges that Officer Hannor filed these cases against him based on "trumped up charges" and that he was improperly found guilty by the two captains, acting as Disciplinary Hearing Officers ("DHO"). He contends he can prove the charges to be false and that the DHOs did not follow guidelines in conducting the hearings. He asserts these alleged actions violated his due process rights. As noted above, he seeks monetary damages on his lawsuit.

The Supreme Court has held that a plaintiff who seeks to recover damages under § 1983 for actions whose unlawfulness would render a conviction or sentence invalid must first prove that the conviction or sentence has been reversed, expunged, invalidated, or otherwise called into question. *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). The Supreme Court provided the following explanation:

> We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.

*Id.* at 486. The Supreme Court thus held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487.

The Supreme Court extended *Heck* to prison disciplinary cases in *Edwards v. Balisok*, 520 U.S. 641, 648, 117 S. Ct. 1584, 137 L. Ed. 2d 906 (1997). A conviction in the prison disciplinary sense is the finding of guilt on the disciplinary charge, and a civil rights lawsuit concerning a prison

13

disciplinary conviction may not proceed until the relevant conviction has been reversed, expunged, or otherwise declared invalid if a favorable judgment would necessarily imply the invalidity of the prisoner's conviction in the disciplinary proceeding. *Id.*; *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998), *cert. denied*, 525 U.S. 1151, 119 S. Ct. 1052, 143 L. Ed. 2d 58 (1999).

Here, Plaintiff is improperly attempting to overturn the prison disciplinary cases in a civil rights lawsuit. He may not bring a civil rights lawsuit about any prison disciplinary case until it has been reversed, expunged or otherwise declared invalid, such as in federal habeas corpus proceedings. Plaintiff has not demonstrated, or even alleged, that any such proceeding has taken place with regard to either of his disciplinary cases or that either of them have been overturned. The present civil rights lawsuit fails to state a claim upon which relief may be granted and will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). The Fifth Circuit has specified that such cases should be dismissed without prejudice to the Plaintiff refiling the claim at such time as he can demonstrate that he has been able to have the prison disciplinary case reversed, expunged or otherwise declared invalid. *Clark*, 154 F.3d at 191.

## III. CONCLUSION

For the reasons stated above, Plaintiff's allegations of deliberate indifference, retaliation and improper disciplinary actions are frivolous for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915A(b)(1). It is accordingly

**ORDERED** that the names of Correctional Officer Corey Valdez, Sgt. Leontyne Haynes, Correctional Officer Antwaain D. Boston, Counsel Substitute Jan M. Smith, Grievance Officer Floyd D. Hicks and Grievance Officer Tommy E. Goodin be removed from the caption of the docket in this case as none has ever been named in a complaint or approved amended complaint as a Defendant.

It is further

**ORDERED** that Plaintiff's original complaint is hereby **DISMISSED WITH PREJUDICE** with regard to Plaintiff's claims against Warden Oliver and Officer Parrish pursuant to 28 U.S.C. § 1915A(b)(1). It is further

**ORDERED** that Plaintiff's original complaint is hereby **DISMISSED WITHOUT PREJUDICE** as to Plaintiff's claims involving the adjudication of his disciplinary cases against Defendants Furr, King and Hannor, pursuant to 28 U.S.C. § 1915A(b)(1). He may re-file these claims if he makes a showing that the disciplinary cases have been reversed, expunged or otherwise declared invalid. It is further

**ORDERED** that any motion not already upon is hereby **DENIED**.

So **ORDERED** and **SIGNED** this **23** day of **January, 2012.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE